JOYCE GODBOUT vs. EMMA COUSENS & others.[1]

Norfolk. September 10, 1985. — November 19, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Libel and Slander. Practice, Civil,* Summary judgment, Complaint. *Emotional Distress.*

Summary judgment was appropriately entered in favor of the defendants in
a defamation action where the defendants' uncontradicted affidavits established that their respective statements to the board of selectmen of a
town concerning the plaintiff, a town official, were true or were not
made with actual malice, either by a knowing falsehood or in reckless
disregard of the truth. [261]

Allegations in a party's unverified complaint are accorded no weight in
determining whether a genuine issue of material fact exists which would
preclude summary judgment under Mass. R. Civ. P. 56. [262-263]

On a son's claim against a municipal worker for defamatory remarks allegedly made by her concerning his elderly mother, there was no genuine
dispute that the remarks did not refer to the son, and summary judgment
was appropriately entered against him. [263-264]

Summary judgment dismissing two claims for intentional infliction of emotional distress was appropriately entered where the materials before the
judge showed no genuine dispute as to intent to humiliate, ridicule, or
harm. [264-265]


CIVIL ACTION commenced in the Superior Court Department
on August 27, 1982.

Motions by the defendants Cousens and Lavelle for summary
judgment were heard by *Robert V. Mulkern,* J., and motions
by the defendants Trudeau and Jones for summary judgment
were heard by *Robert J. Hallisey,* J. The plaintiff's motion
for summary judgment on a counterclaim by the defendant
Jones was also heard by *Hallisey,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

---

[1] Harold Jones, Marjorie Lavelle, and Juliette Trudeau.

*Deborah K. Berk* for the plaintiff.
*Henry P. Sorett* for Juliette Trudeau.
*Deirdre H. Harris* for Emma Cousens.
*James N. Wittorff* for Marjorie Lavelle.
*Anthony T. Petrocca & Susan B. Persky,* for Harold Jones, submitted a brief.

ABRAMS, J. The issue raised by these appeals is the correctness of rulings by two Superior Court judges granting summary judgments in favor of four defendants on the plaintiff's claims for defamation and intentional infliction of emotional distress.[2] The plaintiff appeals. The defendant Jones appeals from a ruling granting the plaintiff's motion for summary judgment on his counterclaim.

1. *The parties.* The plaintiff, Joyce Godbout, was appointed to the council on aging (COA) by the board of selectmen of Bellingham (board) in 1976. Subsequently she was elected president by the members of the COA. Sometime in the spring of 1982, the board began receiving complaints concerning the plaintiff's conduct and job performance. As a result, in May, 1982, the board commenced an investigation. Each of the four defendants before us took part in the investigation.

At that time the defendant Cousens was a member of the board of health of Bellingham. Cousens had assisted her own elderly mother in dealings with the COA. The defendant Jones is a self-employed machinist. The plaintiff provided services to Jones's elderly mother. She discussed conditions at Jones's mother's home with the board of health. The defendant Trudeau had an elderly aunt and uncle living in Bellingham. The plaintiff worked on problems relating to Trudeau's aunt and uncle. The defendant Lavelle is a resident of Florida. Her mother is an elderly resident of Bellingham, who had used COA services.

2. *The complaint.* We summarize the allegations and undisputed factual circumstances giving rise to the complaint. Prior to May, 1982, members of the board received complaints con-

---

[2] In her complaint, the plaintiff named twelve individuals and the town of Bellingham as defendants. Summary judgment motions were granted in favor of eight of the defendants. The plaintiff appeals only from the summary judgments granted Cousens, Jones, Lavelle, and Trudeau.

cerning the plaintiff. Those complaints indicated that the plaintiff was harassing elderly persons and using improper influence in her position on the COA. On May 11, 1982, the board sent the plaintiff a letter informing her that the board would hold an executive session pursuant to the Open Meeting Law, G. L. c. 39, § 23B (1984 ed.),[3] to consider the complaints against her and possible disciplinary action. On May 17, the board held an executive session attended by the plaintiff. The board asked Cousens and Jones to appear to discuss their experiences with the plaintiff and the COA. At the meeting Cousens and Jones made statements to the board which the plaintiff claims are defamatory.

On May 20, 1982, the board sent the plaintiff a written list of the allegations against her.[4] The plaintiff denied the charges

[3] "Section 23B. All meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided by this section.
"
 . . . .

"Executive sessions may be held only for the following purposes:
"
 . . . .

"(2) To consider the discipline or dismissal of, or to hear complaints or charges brought against, a public officer, employee, staff member, or individual, provided that the individual involved in such executive session pursuant to this clause has been notified in writing by the governmental body at least forty-eight hours prior to the proposed executive session. Notification may be waived upon agreement of the parties. A governmental body shall hold an open meeting if the individual involved requests that the meeting be open. If an executive session is held, such individual shall have the following rights:

"(a) to be present at such executive session during discussions or considerations which involve that individual.

"(b) to have counsel or a representative of his own choosing present and attending for the purpose of advising said individual and not for the purpose of active participation.

"(c) to speak in his own behalf."

[4] "As requested by you, the following is a list of allegations discussed during our Executive Session of May 17, 1982:

"1. Harassment of [certain] elderly individuals [names omitted].

"2. The COA van being used to transport employees of the Blackstone Valley Regional Adult Day Health Center to and from work; namely, Mrs. Rita Cole.

"3. Using your position on the COA as an improper influence to enroll people at the Blackstone Valley Regional Adult Day Health Center, violating the conflict of interest laws.

in writing. The plaintiff requested that the board conduct its investigation at an open meeting pursuant to G. L. c. 39, § 23B. The board continued its investigation in open meetings held during June and July.

In a letter dated June 13, 1982, the defendant Trudeau wrote to the board and described her aunt's and uncle's experiences with the plaintiff. The essence of the letter was that the plaintiff had mistreated Trudeau's aunt and uncle and had taken advantage of them. In the letter Trudeau asked the board to remove the plaintiff from her job.

In a letter dated June 30, 1982, the defendant Lavelle wrote to the board complaining about the treatment her mother had received from the plaintiff and the COA. The letter accused the plaintiff of intimidating the elderly and of billing Medicaid for charges not incurred by Lavelle's mother. As a result of its investigation, the board on July 12, 1982, voted to rescind the plaintiff's appointment to the COA.

We now consider whether each of the defendants, in moving for summary judgment, met the initial burden to "show that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). We look to the affidavits, which "shall set forth such facts as would be admissible in evidence." Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). See *Madsen* v. *Erwin,* 395 Mass. 715, 719 (1985). We do not consider the credibility of the evidence. We examine separately the record before the court on each defendant's motion. The substantive law of defamation determines which facts are material to the claims.

a. *The standard for defamation.* The plaintiff admits that for purposes of her defamation action, she is a "public figure"[5]

"4. Violation of Section 2-101 of the Bellingham Code of By-Laws; namely, that COA appointees shall conduct and carry out programs 'designed to meet the problems of aging.' That a COA member should try to correct the problem regarding the . . . Jones home rather than be involved with trying to have it condemned."

[5] The defendant Trudeau filed a request for admissions, see Mass. R. Civ. P. 36 (a), 365 Mass. 795 (1974), that asked the plaintiff to admit being a "public figure" and a "public officer" within the meaning of those

and must therefore prove that the defendants acted with actual malice in publishing the defamatory statements.[6] *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964). *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849 (1975). "Actual malice is not necessarily proved in terms of ill will or hatred, but is proved rather by a showing that the defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false." *Stone* v. *Essex County Newspapers, Inc., supra* at 867. To prove "reckless disregard" there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.,* quoting *St. Amant* v. *Thompson,* 390 U.S. 727, 731 (1968).

While we favor the use of summary judgment procedures in defamation cases, *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.,* 395 Mass. 471, 480 (1985), the defendants must still meet the usual burden under rule 56 of demonstrating by evidence "considered with an indulgence in the plaintiff's favor," the absence of disputed issues of material fact and their entitlement to judgment as a matter of law. *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.,* 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). Because the issue of actual malice involves a determination of state of mind, summary judgment will frequently be inappropriate in defamation cases,

---

terms given in *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849 (1975), at all times relevant to the plaintiff's action. The plaintiff did not respond to the request for admissions. We deem the matters admitted. Mass. R. Civ. P. 36 (a). *Fleming* v. *Benzaquin,* 390 Mass. 175, 176 n.5 (1983). 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2259, at 257 (Supp. 1985). Additionally, the plaintiff conceded in her brief and in argument to this court that she is a public figure.

[6] The defendants' statements were made to public officials by way of complaint about the performance in office of the plaintiff, a public official. Because the plaintiff's complaint fails on other grounds, we need not decide whether these statements are conditionally privileged as "'petition[s] [to] the Government for a redress of grievances'" under the First Amendment. See *McDonald* v. *Smith,* 472 U.S. 479, 482 (1985). For the same reason, we also do not decide what privilege, if any, protects statements made to public officials conducting an investigation.

*Hutchinson* v. *Proxmire,* 443 U.S. 111, 120 n.9 (1979). However, the issue of actual malice "is not automatically a jury question." *Aarco, Inc.* v. *Baynes,* 391 Mass. 560, 564 (1984). The plaintiff is entitled to a jury trial if there is some indication before the motion judge from which an inference of actual malice — knowing falsehood or reckless disregard of the truth — could be drawn. *Id. Central Broadcasting Corp., supra.* See *Reader's Digest Ass'n* v. *Superior Court,* 37 Cal. 3d 244, 252 (1984), petition for cert. filed sub nom. *Synanon Church* v. *Reader's Digest Ass'n,* 53 U.S.L.W. 3619 (U.S. Feb. 26, 1985) (No. 84-1304); Note, The Role of Summary Judgment in Political Libel Cases, 52 S. Cal. L. Rev. 1783, 1820-1821 (1979).

b. *The statements.* The defendants Cousens and Jones each made statements at the closed executive session of the board on May 17. Cousens repeated a remark she had heard from a clerk at the COA office: "The person in the [COA] office said that the busses used to be bad — they were dirty and the restrooms weren't very clean. She then said that the busses now are good, 'but what is a few bucks under the table when the comfort and safety of the seniors are concerned.'" According to the plaintiff, Cousens' statement defames her by suggesting that the plaintiff bribed someone.[7] In her affidavit, Cousens avers, "I did not make any statement at any time stating, implying, or suggesting that Mrs. Godbout was passing money 'under the table.' I had told one of the selectmen privately, before the meeting held in executive session on May 17, 1982, that I had overheard a remark by a COA clerk concerning passing money under the table to obtain bus service for the COA. I repeated at the meeting that the comment had been made by the clerk."

---

[7] The plaintiff's complaint alleges that other statements made by Cousens at the May 17 meeting are defamatory. Because the plaintiff's briefs and arguments to this court focus only on the statement quoted in the text, we do not consider whether any of the other statements were defamatory. Even if those statements were properly before us, none advances the plaintiff's cause.

Jones told the board, "On [December 23, 1981], 11:15 P.M., Joyce called me and said that she and the Board of Health were up there [at my mother's house] that day and want my mother moved the following day." The plaintiff's complaint alleges that Jones's statement was intended to mean and was understood to mean that the plaintiff was harassing Jones's mother. Jones submitted an affidavit in which he asserted the truth of his statement at the meeting and his lack of intent to hold the plaintiff up to public scorn or ridicule.

Trudeau's allegedly defamatory statements were made in a letter she wrote to the board on June 13, 1982, in which she described the experiences of her elderly aunt and uncle with the plaintiff.[8] In her affidavit, Trudeau states that at the time she wrote the letter, she believed that everything she said was true, that she still reasonably believes everything to be true, that her sole reason for writing was to protect the welfare of her aunt and uncle, and that she did not intend to harm the plaintiff.

Lavelle's allegedly defamatory statements were made in her letter of June 30 to the board. In her complaint, the plaintiff singles out the following comments as defamatory: "Joyce entered my mother's apartment and forcibly took my mother from her bed to attend a Selectmen's meeting in regard to Joyce"; "Joyce billed my mother's medicaid for bills not [incurred] by my mother"; "[i]t is a sad state of affairs that she [the plaintiff] is allowed to intimidate the elderly"; and "[Lavelle's mother] is having problems with her health because of the tense situation created by this Joyce." In her affidavit, Lavelle states that her letter was written "in good faith" and that her "only intent" was "my concern for my mother and her

---

[8] The plaintiff's complaint quotes at length from Trudeau's letter. The plaintiff's interpretation of the letter is that it "strongly suggests that [Trudeau's aunt] lost $500.00 and other valuable property while in plaintiff's care and that it was misappropriated by the plaintiff [in] larcenous circumstances. The letter further strongly hints that the plaintiff took advantage of [the aunt and uncle] for her own selfish interests."

well-being, and in no way did I intend to injure the Plaintiff, Joyce Godbout."[9]

c. *The summary judgments.* We assume, without deciding, that the defendants' statements might hold the plaintiff up to contempt, ridicule or hatred, or tend to impair her standing in the community. *Ingalls* v. *Hastings & Sons Publishing Co.,* 304 Mass. 31 (1939). Nevertheless, each of the defendants, by affidavit, met the initial burden under rule 56 (c) of showing that there was no dispute as to a material fact and that he or she was entitled to judgment as a matter of law. The defendants Cousens, Jones, and Trudeau each averred the truth of his or her statements. Jones, Trudeau, and Lavelle each averred the absence of any intent to harm the plaintiff. A witness is competent to testify as to his own intent, *Lunn & Sweet Co.* v. *Wolfman,* 268 Mass. 345, 353 (1929), so that statements of intent in an affidavit are appropriately considered as admissible evidence on a motion for summary judgment. See *Commonwealth Bank & Trust Co.* v. *Plotkin,* 371 Mass. 218, 221 (1976). Each of the defendants established by affidavit that his or her statements were true or were not made with actual malice, either by a knowing falsehood or in reckless disregard of the truth. Thus, the defendants met their burden.

Once the defendants met their burden in moving for summary judgment, the burden shifted to the plaintiff to show with admissible evidence the existence of a dispute as to material facts. "When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate,

[9] Lavelle also averred in her affidavit that her letter to the selectmen "was written without malice, recklessness or negligence . . . and is entitled to such communications on matters of public concern." The plaintiff moved to strike that portion of the affidavit. The record does not indicate the court's ruling. However, because those phrases are conclusions of law rather than statements of fact based on personal knowledge, we disregard them. Mass. R. Civ. P. 56 (e). *Madsen* v. *Erwin,* 395 Mass. 715, 721 (1985). *Beard* v. *Annis,* 730 F.2d 741, 743 (11th Cir. 1984).

shall be entered against him." Mass. R. Civ. P. 56 (e). See *Madsen* v. *Erwin,* 395 Mass. 715, 719 (1985).

The plaintiff submitted no affidavits that controvert the factual averments in the defendants' affidavits,[10] but instead relies on the allegations of her unverified complaint to establish the existence of disputed issues of fact.[11] This she cannot do. Only if the plaintiff files a verified complaint is the complaint treated as an affidavit for purposes of rule 56 (e). *Pupecki* v. *James Madison Corp.,* 376 Mass. 212 (1978). If, as here, the complaint is *not* verified, then the court considers it only to ascertain

[10] The plaintiff submitted no counter affidavit concerning Jones, Trudeau, or Lavelle. She did submit an affidavit stating that she had rejected the defendant Cousens' application for a job and that thereafter Cousens was hostile to the plaintiff. The plaintiff's affidavit does point to a factual circumstance which, if supported by other evidence adduced at trial, might lead a reasonable jury to believe that Cousens harbored some malicious intent against the plaintiff. The plaintiff's affidavit, however, does not contradict the truth of Cousens' assertion that she had heard a clerk make the statement. Nor does the plaintiff's affidavit even dispute the truth of the clerk's statement or point to any facts that show the statement was so improbable that Cousens was reckless in repeating it. Thus, the plaintiff's affidavit does not controvert the truth of Cousens' statement.

At the argument on Cousens' summary judgment motion, Cousens made an oral motion to strike the plaintiff's affidavit. The judge denied the motion and Cousens cross appeals. Because we decide in Cousens' favor on other grounds, we do not discuss that ruling.

[11] The plaintiff argues that entry of summary judgment was premature because she did not have time to complete discovery. The plaintiff filed her complaint on August 27, 1982. In March, 1984, she sent interrogatories to the defendants. Rule 30 of the Superior Court (1974) states, "Interrogatories may be served within one year after the entry of an action or within such further time as the court may allow." The plaintiff's counsel filed a motion for leave of court but did not bring the motion to the court's attention and makes no attempt here to explain the lack of diligence. Nor did the plaintiff notice any depositions in the eighteen months between filing her complaint and the filing of the defendants' motions for summary judgment. Hence, we reject the argument that summary judgment was premature.

Even if the plaintiff had initiated discovery in a timely fashion, she was required to file an affidavit representing that "for reasons stated [she could not] present by affidavit facts essential to justify [her] opposition" and requesting a continuance to complete discovery. Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974). The plaintiff's attorney did submit an affidavit indicating the plaintiff's intent to subpoena newspaper reporters and the secretary of the board to prove that these sources had quoted the defendant Cousens' statements verbatim. None of the defendants contested the fact they made the statements in issue here.

the nature of the cause of action or defense and to guide the court in determining which facts are material. See *Ratner* v. *Young,* 465 F. Supp. 386, 389 (D.C.V.I. 1979); 10A C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 2721, 2722, at 43-46 (1983). Allegations in an unverified pleading are not accorded any evidentiary weight in determining whether there exists a genuine issue of material fact under rule 56 (c).[12] See *Piper* v. *United States,* 392 F.2d 462, 464 (5th Cir. 1968), and cases cited. Because the defendants met their burden of showing no disputed issues and entitlement to judgment, the plaintiff's failure to make the responsive showing is fatal. See *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham,* 382 Mass. 283, 298-299 (1981); *Farley* v. *Sprague,* 374 Mass. 419, 425 (1978); *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 155 (1977).

3. *Jones's counterclaim.* The defendant Harold Jones appeals the entry of summary judgment against him on his counterclaim. In his complaint, Jones alleges that statements made by the plaintiff at the closed executive session of May 17, 1982, and repeated at the open meeting on June 7, defamed him. In discussing her treatment of Jones's mother, the plaintiff commented on Jones's mother's clothing, personal hygiene, diet, and care of her home.

For purposes of this decision, we assume, without deciding, that the statements are defamatory of Jones's mother. If the statements are false, they would support a claim of defamation. However, "[i]t is a fundamental principle of the law of defamation that a plaintiff must show, inter alia, that the allegedly defamatory words published by a defendant were of and concerning the plaintiff." *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.,* 395 Mass. 471, 474

---

[12] Indeed, the plaintiff did not even introduce in evidence Trudeau's letter. A copy of Trudeau's letter is in the record on appeal only because Lavelle appended a copy to her motion.

"We note with frustration the more and more typical phenomenon, present in this case, of a . . . court having to decide a motion for summary judgment without the assistance the court should expect from counsel." *Stepanischen* v. *Merchants Despatch Transp. Corp.,* 722 F.2d 922, 927 (1st Cir. 1983).

(1985). A private person makes that showing upon "proof that the defendant was negligent in publishing defamatory words which reasonably could be interpreted to refer to the plaintiff." *Id.* at 477.

Jones admits in his affidavit that the statements here at issue "refer[ ] to my mother." He makes no argument that the words themselves could reasonably be interpreted to refer to him. Nor does Jones point to any extrinsic facts that show that the words could be interpreted to refer to him. *Id.* at 480. *Brauer* v. *Globe Newspaper Co.,* 351 Mass. 53, 56 (1966). Moreover, the plaintiff made the remarks in the context of a discussion of *her* treatment of Jones's mother. In these circumstances, there was no genuine dispute that the remarks did not refer to Harold Jones. Summary judgment was properly entered against him.

4. *Claims for intentional infliction of emotional distress.* Both the plaintiff Godbout and plaintiff-in-counterclaim Harold Jones sought damages for intentional infliction of emotional distress. The motion judge granted summary judgment on these claims against both the plaintiff and Jones.[13] Both rulings were correct. To sustain an action for intentional infliction of emotional distress, a plaintiff must show, inter alia, "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct." *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976). There was no genuine dispute on intent on either claim.

The plaintiff argues that the allegations in her complaint that the defendants' statements were made with actual malice suffice to demonstrate that the defendants bore the requisite intent. We have already concluded that there was no evidence of actual malice shown in the plaintiff's defamation claims. Hence, there is no disputed issue on the defendants' intent to

---

[13] A Superior Court judge had previously allowed Trudeau's motion under Mass. R. Civ. P. 12 (b)(6), 365 Mass. 754 (1974), to dismiss the plaintiff's emotional distress action against Trudeau for failure to state a claim upon which relief could be granted.

inflict emotional distress, and the defendants are entitled to summary judgment.

Similarly, Jones's claim for emotional distress fails because there is no genuine dispute on the plaintiff's intent to harm Jones. The plaintiff submitted an affidavit supporting her summary judgment motion on Jones's claim, in which she stated that she had made her statements as to Jones's mother's mental and physical condition in good faith and without the intent to humiliate, ridicule, or harm Jones or to inflict emotional distress on him. Although Jones submitted a counteraffidavit,[14] nothing therein suggests any factual circumstances from which a reasonable jury could infer that the plaintiff intended to harm Jones or should have known that emotional distress to Jones was a likely result.

Because neither the plaintiff's nor Jones's claims survive on independent grounds, we need not decide whether an action for intentional infliction of emotional distress could ever survive the loss of an action for defamation. See *Fleming* v. *Benzaquin,* 390 Mass. 175, 189 (1983). But see *Reader's Digest Ass'n* v. *Superior Court,* 37 Cal. 3d 244, 265 (1984) (cause of action for intentional infliction of emotional distress does not survive failure of defamation claim because liability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication); *Hutchinson* v. *Proxmire,* 579 F.2d 1027, 1036 (7th Cir. 1978) (same), rev'd on other grounds, 443 U.S. 111 (1979).

5. *Conclusion.* We conclude that there are no genuine issues of material fact on the plaintiff's claims and on Jones's counterclaim. The moving parties are entitled to judgments as a matter of law.

*Judgments affirmed.*

---

[14] Jones's counteraffidavit only disputes the statements made about his mother's mental and physical condition.