Smith, J.
INTRODUCTION
This is a declaratory judgment action brought by the Estate of Joseph J. Capone (hereinafter “Estate”) and his son, Joseph J. Capone, Jr., seeking a determination as to whether Joseph J. Capone’s (hereinafter “Joseph”) former wife, Barbara M. Capone (hereinafter “Barbara”) is entitled to receive the proceeds from the distribution of the Polaroid Corporation retirement plan assets accumulated by Joseph. At issue is whether the 1978 designation of beneficiary made by Joseph in the Polaroid Beneficiary Form has any continuing legal force in spite of the terms of the divorce agreement (hereinafter “Agreement”) in which Barbara specifically waived all her rights to Joseph’s pension and retirement benefits. The parties have filed cross motions for summary judgment. For the reasons set out below, the Court GRANTS the plaintiffs’ Cross Motion for Summary Judgment and DENIES defendant Barbara M. Capone’s Motion for Summary Judgment. The Court shall enter a declaration that defendant Barbara M. Capone waived all her rights to Joseph’s pension and retirement benefits in question and shall order defendant Polaroid Corporation to pay said assets to the Estate.
FACTS
On October 31, 1978, the late Joseph J. Capone, an employee of Polaroid Corporation, filled out and signed a Polaroid Beneficiary Form (hereinafter “Beneficiary Form”), in which he designated his wife, Barbara M. Capone, as the sole beneficiary of his Polaroid Profit Sharing Retirement/Polaroid Employee Stock Ownership Plans and his Polaroid Pension Survivor Income Benefit (hereinafter “Retirement Plan”). Above the signature line on the Beneficiary Form was a paragraph which stated, in part: “In signing this form I understand . . .” [ 1] “that if I have named more than one beneficiary under any of the above plans, each beneficiary who survives me will receive an equal share of the benefit unless I have stated otherwise. If no beneficiary survives me, settlement will be made as provided by each plan;” [2] “that this form must be received by Corporate Payroll to become effective; once received it will be considered in effect as of the date signed;” and [3] “that once received, this form replaces all earlier beneficiary forms covering the same benefits . . .”
On September 26, 1988, the Middlesex Probate and Family Court entered a judgment of divorce nisi for the Capones, on the grounds of irretrievable breakdown of the marriage. The divorce decree “further ordered that the parties . . . comply with the terms of an Agreement dated September 26, 1988 filed, incorporated and merged in this Judgment.” The Agreement which was incorporated into the divorce decree contained numerous provisions detailing the division of the marital estate between the Joseph and Barbara. Among the terms of the provisions were requirements that Joseph pay alimony to Barbara in the amount of $1,000 per-month, that he would pay her attorneys *707 fees, and that he would name her as beneficiary of a $50,000 life insurance policy on his life and would keep the policy in effect. In consideration for these, and other provisions, Barbara agreed to a provision, entitled “Pension” which stated: “The Wife waives all rights to the husbands [sic] Polaroid Retirement Funds, annuities, ESOP shares, future pension rights and all other retirement, savings or assets not covered by this agreement accumulated now or in the future.”
In 1991, Joseph received a seventeen page Personal Statement of Benefits booklet (“the statement”) from Polaroid, which described the status of his coverage under Polaroid benefit plans. On page five, the statement described his lump sum benefits as being payable to “your designated beneficiaries,” and stated that his “ESOP account balance is paid to your surviving spouse, or designated beneficiary if you are not married.” The remainder of the document repeatedly referred to his “beneficiaries” in connection with a variety of benefits. On page six, the statement says: “Life Insurance benefits will be paid to the beneficiaries named on your Polaroid Beneficiary Form. Your most recent form is dated 1978. If any significant changes have taken place in your life since that time, you may want to review your designations and update them, if necessary.”
Joseph died on August 2, 1992. It is undisputed that he never changed the designation of beneficiary at any time before his death.
DISCUSSION
In order to be entitled for Summary Judgment a party must show, based upon the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56; Community National Bank v. Dawes, 369 Mass. 550, 553-556 (1976). The burden is on the moving party to demonstrate with admissible evidence that there is no genuine issue as to any material fact. Godbout v. Cousens, 396 Mass. 254, 261, 485 N.E.2d 940 (1985). Finally, “a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Koarouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991). Once the moving party meets its burden, the burden shifts to the non-moving party “to show with admissible evidence the existence of a dispute as to material facts.” Godbout v. Cousens, 396 Mass. 254, 261, 485 N.E.2d 940 (1985).
a. ERISA
The Employee Retirement Income Security Act, 29 U.S.C. §§1001 et seq., (hereinafter “ERISA”) extensively regulates the field of Retirement/Pension Funds. Regarding preemption of state laws, ERISA provides that “the provisions of this chapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title ...” 29 U.S.C. §1144(a) (1985 ed.). One exception to this preemption clause is that it “shall not apply to qualified domestic relations orders (within the meaning of Section 1056(d)(3) (B)(i) of this title).” 29 U.S.C. §1144(b) (1985 ed.). Section 1056(d) states that “[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated,” but qualifies this rule by stating that it “shall not apply if the order is determined to be a qualified domestic relations order.” 29 U.S.C. §1056(d) (1985 ed., Supp. 1995). The parties agree that the settlement agreement in this case is not a Qualified Domestic Relations Order (“QDRO”), as defined in §1056(d).[3]
The plan administrator of an ERISA plan “shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan.” 29 U.S.C. §1104(a)(1) (1985 ed.). The parties do not dispute that the documents on file in the present case list Barbara Capone as the sole beneficiary of the late Joseph J. Capone’s pension plan.
b. Waiver
The primary issue in the case is whether the “Pension” provision of the Capones’ divorce settlement Agreement effectively waived Barbara’s rights as the beneficiary of the Retirement Plan under ERISA even though the Agreement was not part of a QDRO. The issue is one of first impression in the First Circuit. The principal cases from other circuits regarding this issue are Fox Valley & Vicinity Const Wrkrs. Pension Fund v. Brown, 897 F.2d. 275 (7th Cir. 1990), cert. denied, 498 U.S. 820 (1990), rehearing denied, 498 U.S. 993 (1990), and McMillan v. Parrott, 913 F.2d 310 (6th Cir. 1990).
Ruling upon facts very similar to those in the case at bar, the Fox VoFey majority adopted the view that a voluntary, explicit, and specific waiver of beneficiary rights in a settlement agreement was valid, notwithstanding the fact that it was not part of a QDRO. The Fox Valley majority distinguishes between an assignment or alienation of benefits and a waiver of benefits, and states that “ERISA preempts any attempt to alienate or assign benefits by a domestic relations order if that order is not a QDRO.” Fox Valley, 897 F.2d at 279. “The QDRO requirements specify the procedures necessary to assign benefits, but those procedures need not be followed when a nonparticipant is waiving an interest in pension benefits. ERISA allows beneficiaries to waive their interests in benefits.” Id., citing 29 U.S.C. §1055(c)(l)(A)(l)(i) (allowing spouse to waive interest in joint and survivor benefit).
This distinction between alienation, assignment and waiver is supported by the customary legal usage of these terms. Black’s Law Dictionary, for instance, defines each term differently. It defines alienation as *708 “. . . [t]he voluntary and complete transfer from one person to another,” and assignment as “[a] transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein . . . [t]he transfer by a party of all of its rights to some kind of property, usually intangible property such as rights in a lease, mortgage agreement of sale or a partnership.” Black’s Law Dictionary 66, 109 (revised 5th ed. 1979). An express waiver is defined as “[t]he voluntary, intentional relinquishment of a known right.” Id. at 1417. These definitions make clear that assignment and alienation concern the transfer of rights, while waiver concerns the abdication of rights. This distinction between transfer and abdication lends support to the proposition that, in enacting the QDRO provision of ERISA, Congress did not intend to limit the ability of beneficiaries to waive their rights under an ERISA plan. Rather, the intent of Congress was to merely limit the ability of beneficiaries to transfer their rights to other individuals. Had Congress intended to limit a beneficiary’s power to relinquish his or her rights, it could have included the word “waiver” in that section of the statute.
Furthermore, federal law historically defers to state law in the field of domestic relations. Faced with the issue of whether a provision of a divorce decree effectively waived an ex-spouse’s rights to the benefits of an ERISA plan, the Fifth Circuit Court of Appeals stated: “Federal respect for state domestic relations law has a long and venerable history. When courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that state law should be given precedence: ‘The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law . . . This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern.’ ” Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1326 (5th Cir. 1994), quoting DeSylva v. Ballentine, 351 U.S. 570, 580 (1956). Based upon this rationale, this Court finds that federal common law applies to this case.
Having concluded that federal common law applies to determine whether an ex-spouse’s waiver is effective, the next question is what the federal common law is. “When ERISA is silent on an issue,” a court “must fashion federal common law rules to govern ERISA suits.” Fox Valley, 897 F.2d at 281, citing Nachwalter v. Christie, 805 F.2d 956, 959 (11th Cir. 1986), and Amato v. Bernard, 618 F. 2d 559, 567 (9th Cir. 1980). In fashioning federal common law, federal courts must look to the statute itself for guidance, and may also be guided by state laws which are consistent with the policies of the federal statute. Fox Valley, 897 F.2d at 281. This Court must follow the same process.
Here, the Court will be guided by Massachusetts law regarding a former spouse’s right to recover life insurance, the same area of state law as the Fox Valley court followed. In Massachusetts, a “[d]ivorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides.” Stiles v. Stiles, 21 Mass.App.Ct. 514, 515, n.3 (1986), citing 5 Rhodes, Couch’s Cyclopedia of Insurance Law §29.4 (2d ed. rev. 1984), and Cowan v. Sullivan, 48 Wash. 2d 680, 682 (1956). The case before the Court fits squarely within the exception for matters which are expressly touched upon in the divorce proceeding. The Court finds that Massachusetts law is consistent with the underlying policy of ERISA, for the same reasons as articulated by the Fox Valley majority, and can thus be the basis for federal common law. Such a holding will promote uniformity, especially in light of the fact that various federal circuit courts have found an identical federal common law. See Lyman Lumber Co. v. Hül, 877 F.2d 692 (8th Cir. 1989), and Brandon v. Travelers Ins. Co., 18 F.3d 1321 (5th Cir. 1994).[4]
The defendant argues that Stiles is not on point. Instead, she argues that the cases which are most relevant to the issue are a myriad of Massachusetts cases which hold that an attempt by an insured to change the named beneficiary of a plan is only effective if the insured has substantially complied with the plan requirements regarding such a change. These cases are not germane to the issue before the Court. Here, we are dealing, not with a change of beneficiaries by the insured, but rather with a waiver of rights by a beneficiary in a divorce decree. Ihe Stiles case is therefore a more appropriate basis upon which to find the federal common law.
Now turning to the facts of the case before the Court, the Court finds that the language of the divorce decree Agreement was clear enough to amount to a voluntary and specific waiver of rights. The decree states: “(t]he Wife waives all rights to the husbands [sic] Polaroid Retirement Funds, annuities, ESOP shares, future pension rights and all other retirement, savings or assets not covered by this agreement accumulated now or in the future.” On the face of it, this language certainly is specific and unambiguous. A comparison to the decrees at issue in Lyman Lumber and Fox Valley is helpful. In Lyman Lumber, the court held that a declaration in a divorce decree that the husband “shall have as his own, free of any interest of [his wife], his interest in the profit-sharing plan of his employer” did not revoke the beneficiary designation to the wife because the language did not specifically refer to and modify the beneficiary interest. Lyman Lumber, 877 F.2d at 693-94. On the other hand, in Fox Valley, the divorce decree stated: “The parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.” Fox Valley, 897 F.2d at 277. The court found this waiver to be clear and specific, especially in light of the fact that it was contained in a voluntary property settlement agreement. Id. at 280-282. The language of the *709 divorce decree in the present case is even more specific than in the Fox Valley decree, in that it names the specific plans to which Barbara waived her rights. Accordingly, the waiver is specific and thus is effective.
In addition, there clearly was consideration given to Barbara for her waiver of rights. Under the terms of the Agreement, she received alimony from Joseph in the amount of $ 1,000 per month. She retained a large portion of the marital properly. In addition, Joseph agreed to name her as the beneficiary of a separate $50,000 life insurance policy, and agreed to keep that policy in effect. Barbara was represented by counsel in the divorce. These facts indicate that her waiver of rights was voluntary.
CONCLUSION
The Court finds as a matter of federal and Massachusetts law that defendant Barbara M. Capone waived her right to receive benefits under Joseph’s Retirement Plan. There being no disputed issues of fact, summary judgment shall issue in favor of the plaintiff.
ORDER
The Court GRANTS the plaintiffs’ Cross Motion for Summary Judgment and DENIES defendant Barbara M. Capone’s Motion for Summary Judgment. The Court hereby declares that defendant Barbara M. Capone waived all her rights to receive benefits under Joseph’s Retirement Plan. The Court ORDERS defendant Polaroid Corporation to pay said assets to the Estate of Joseph J. Capone.

Section 1056(d) defines a qualified domestic relations order as a domestic relations order which, among other things, “creates or recognizes the existence of an alternative payee’s right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.” 29 U.S.C. §1056(d) (1985 ed.).

But see McMillan v. Parrott, 913 F.2d 310 (6th Cir. 1990). The McMillan court found that a broad waiver provision in a divorce agreement does not effectively terminate an ex-wife’s rights under a pension plan. Instead, it found that ERISA required that the plan documents on file govern the disposition of the assets. However, the Sixth Circuit appears to stand alone in its view.