Merrick, P.J.
This is an action by the purchasers of a home to recover against the sellers for their alleged misrepresentations concerning a septic system. Defendants Greg A. and Jill Cohan (the “Sellers”) have appealed the grant of summary judgment on liability in favor of plaintiffs Farris and Dorothy Ajalat (the “Buyers”). We view the evidence in the light most favorable to the non-moving parties, the Sellers. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 459 (1997).
In early 1994, the Sellers decided to sell their home at 2 Pilgrim Road in Hamilton to buy a larger home. They had previously lost a home they were trying to buy in Tops-field when its septic system Med to pass inspection. While they had had no problems with their cesspool at Pilgrim Road, they were aware of changes in state regulations (‘Title V”) and wanted to be sure that no difficulties would arise in connection with any proposed sale. Their broker referred them to Raggs Septic Service, Inc. (“Raggs”) to inspect the system. On May 19,1994, a representative of Raggs went to Pilgrim Road and pumped out the cesspool, a procedure that the Sellers thought was necessary for the inspection and would also satisfy their annual maintenance requirements. Raggs later offered to provide a certification of the system for about $1,500.00.
On June 12, 1994, at their broker’s request, the Sellers completed a “Sellers’ Description of Property” form. That form requested a description of the sewage system, the name of the sewage service company, the date the system was last pumped and the frequency of pumping. To those questions, the Sellers answered, respectively, “cesspool,” “Raggs, Inc.,” “5/19/94” and “2 years.” In fact, the system had been pumped annually but, while the Sellers located the invoice for 1992, they could not find the invoice for 1993. They therefore followed the advice of their broker in answering “2 years” instead of “annually” to the question on frequency of pumping.
Two days later on June 14,1994, Raggs returned to Pilgrim Road for the certification. Raggs again pumped out the cesspool, installed a “sanitary T’ at a cost of $200.00, performed a field treatment of hydrogen peroxide for $1,020.00 and a bacteria treatment for $96.00, provided a guaranty of the system for one year and billed the Sellers for a total cost of $1,521.00, including the certification. Raggs’ manager testified at a deposition that the treatments performed were used when a system was starting to fail, but the Sellers thought they were only part of the certification process. Raggs’ certification and guaranty described the system as “in good structural condition ... leaching properly” with flow “found to be good.” The certification also noted that pumping should be performed annually.
*267 On July 27,1994, the Buyers signed an agreement to purchase the property for $203,000.00. They had been provided with a copy of the June 12, 1994 “Sellers’ Description of Property” and the Raggs warranty and certification, but were not given the itemized statement of work done in connection with the certification. The purchase and sale agreement included the following printed paragraphs:
28. BUYER’S HOME INSPECTION ACKNOWLEDGEMENT. This agreement is subject to the right of the BUYER to obtain, at his own expense, a home inspection of the premises by consultants of his own choosing ... [by] July 18, 1994. If the BUYER is not satisfied with the results of such inspection, this Agreement may be terminated.... In the event the BUYER does not elect to have such inspection or to so terminate ... the SELLER and the Broker(s) are hereby released from liability relating to defects in the premises which the BUYER or BUYER’S consultants could reasonably have been expected to discover.
29. WARRANTIES AND REPRESENTATION ACKNOWLEDGEMENT. The BUYER acknowledges that he has not relied upon any warranties or representations not incorporated in this Agreement, except for the following additional warranties or representations, if any, made by either the SELLER of the broker.
There follows the typewritten entry “None.” A printed rider provision advised the Buyers of the proposed requirement of Title Y that the system be replaced in the event of failure.
The Buyers did not have the property inspected, but purchased the property on September 9, 1994. The septic system failed by way of a surface breakout in December of 1994 and, before this action was brought in January, 1997, the Buyers were obliged to pump out the cesspool 11 times. The estimated cost to replace the system is $12,800.00. The Buyers brought this action for damages alleging intentional misrepresentations. The trial court allowed the Buyers’ motion for summary judgment on liability, and ordered them to schedule a hearing for assessment of damages. The Sellers appealed pursuant to Dist./Mun. Cts. R.A.D. A., Rule 8C.
1. As noted, the court entered summary judgment on liability only.[3] Damages in this case have not been assessed, and no final judgment has been entered under Mass. R. Civ. R, Rule 58(a). An interlocutory ruling may be reviewed only upon a report by the trial judge pursuant to Dist./Mun. Cts. R. A. D. A, Rule 5. Price-Hanson v. Pare, 1997 Mass. App. Div. 101, 101-102 and cases cited. In the absence of such report, any appellate procedure in this matter is premature. Tisei v. Building Inspec. of Marlborough, 5 Mass. App. Ct. 328, 330 (1977). However, as the merits of the Buyers’ summary judgment motion have been briefed and argued by the parties, we have elected to express our views upon them, R. & F. Micro Tool Co. v. General Amer. Life Ins. Co., 23 Mass. App. Ct. 694, 699 (1987), for such benefit as they may be on any reconsideration by the trial judge.[4]
*268 2. The Sellers argue that this action is barred by the “Home Inspection” and “Warranties and Representations” clauses recited above. The judge ruled correctly, however, that the general nature of those clauses of the purchase and sale agreement do not bar the Buyers from litigating their reliance upon any representations made to them. Sheehy v. Lipton Indus., Inc., 24 Mass. App. Ct. 188, 193-194 (1987). See Turner v. Johnson & Johnson, 809 F.2d 90, 95-97 (1st Cir. 1986) (Discussing factors considered when a party claims a representation at variance with contract provisions).
3. “A claim for misrepresentation requires that the plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment.” McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995). Putting aside the significant questions of whether the evidence raises a genuine issue of material fact as to the Sellers’ knowledge and intent, we note that the Buyers’ detrimental reliance is an essential element of any action for misrepresentation. Nei v. Burley, 388 Mass. 307, 311 (1983); RESTATEMENT (SECOND) OF TORTS §537 (1977). Asserting such reliance in their Rule 56 affidavit, the Buyers state:
If we had known about the hydrogen peroxide, we would have been put on notice that something was wrong with the system. We would not have purchased the house if we had any reason to believe the cesspool was not properly operating. We would have insisted that the Seller replace the system or made provisions for Seller to pay for a new system.
“In cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “In such cases, much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances, the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.” Id. A party is entitled, of course, to testify as to his own state of mind, Godbout v. Cousens, 396 Mass. 254, 258-261 (1985), and, where “an affidavit as to a party’s own belief is unmet by countervailing materials sufficient to permit an inference to the contrary, summary judgment may be granted on the state of mind issue.” Landis v. Moon, 1996 Mass. App. Div. 118, 120, citing Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 439-440 (1995) and Godbout v. Cousens, supra at 260-261.
Here, while the “Home Inspection” and “Warranties and Representations” clauses do not bar this action, they are sufficient when viewed together with the cautionary notice concerning Title V, the Buyers’ failure to have the system inspected and the certificate’s stated requirement of annual pumping to raise a question of fact as to the Buyers’ reliance; i.e., whether they would have actually balked at the purchase if they had known about the work performed on June 14, 1994 and the annual pumping of the system.
Appeal dismissed.

 The Sellers argue that the following comment by the court is evidence that the judge had only a “mere belief’ that the Buyers were likely to prevail at trial: ‘THE COURT: Well, I think you’ve got some liability. I think I’ll take this under advisement. In the meantime, you guys ought to talk and see if you can get it going, because — I think he’s got a pretty good case.” Any experienced trial lawyer or trial judge will recognize that comment for what it was - proper and sound encouragement of settlement exploration.

 “ [T]he power to reconsider an issue remains in the court until final judgment.” Vittands v. Sudduth, 41 Mass. App. Ct. 515, 516 n.5 (1996), quoting from Riley v. Presnell, 409 Mass. 239, 242 (1991).