MEYER H. GOLDMAN & another *vs.* FREDERICK J. MAHONY, JR., & others.

Middlesex.    October 8, 1968. — November 22, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Error,* Whether error harmful. *Deceit. Damages,* For deceit. *Evidence,* Judicial discretion, Relevancy and materiality. *Contract,* To repair leaks. *Practice, Civil,* Charge to jury; Exceptions: outline bill; Costs. *Rules of Court.*

At the trial of an action for alleged misrepresentations by the defendants that the basement rooms and the ground floor vestibule of a house which the plaintiffs subsequently purchased from the defendants were dry and had no water problems, there was no abuse of discretion or prejudicial error in the exclusion of questions to the plaintiffs as to whether they had relied on the representations, where the questions disclosed the expected answers and reliance was otherwise directly shown [707]; or in the exclusion of evidence of a flood in the house of the plaintiffs' neighbor [707]; or in the judge's rulings relating to municipal plumbing regulations [707–708]; or, in the circumstances, in allowing a question on cross-examination of one plaintiff as to whether he would accept an appropriate offer from the defendants to buy back the house [708].

The judge at the trial of an action rightly charged the jury that an undertaking, whereby the defendants, as a part of and in consideration of the purchase of a house by the plaintiffs, "guarantee[d] for a period of one (1) year sound construction and quality workmanship and also agree[d] to repair any leaks," applied only to leaks appearing within one year of the undertaking, and that the defendants would remain responsible for inadequate repair of such leaks.   [708–709]

At the trial of an action for alleged misrepresentations by the defendants that the basement rooms and the ground floor vestibule of a house which the plaintiffs subsequently purchased from the defendants were dry and had no water problems, where it appeared that the defendants as a part of and in consideration of the purchase guaranteed to repair any leaks appearing within one year of the guaranty and that they did a substantial amount of work in reconstructing and enlarging the drainage system under their guaranty, the judge rightly charged that the worth of all that the plaintiffs received, including the worth of the guaranty as reflected in what the defendants did under it, was to be measured against what the plaintiffs would have received if the representations had been true [709]; in the context of the charge and in view

of certain testimony of a plaintiff there was no error prejudicial to the plaintiffs in an instruction in effect that they were not damaged if they "got a tremendous buy" [709–711].

There was no merit in sundry exceptions to the judge's charge at the trial of an action for deceit or in exceptions to his alleged omission therefrom of certain requested instructions. [711]

Where the plaintiffs in an action in which there was a verdict for the defendants filed an outline bill of exceptions under S. J. C. Rule 1:22, 351 Mass. 742, and both parties properly filed designations under par. (2) of the rule, but the plaintiffs with their brief filed a record appendix consisting of a running summary of the testimony instead of merely such portions of the designations as their attorney deemed "necessary to his argument" as required by par. (13) of the rule, and the defendants filed with their brief, as permitted by such paragraph, a record appendix reproducing the full text of the testimony which had been summarized by the plaintiffs, this court ordered that the expense of printing the defendants' record appendix, so far as it included material designated, initially or in reply, by the plaintiffs, should be recovered by the defendants as part of their costs. [711–712]

CONTRACT OR TORT.   Writ in the Superior Court dated December 10, 1963.

The action was tried before *Sgarzi,* J.

*Benjamin Goldman* for the plaintiffs.

*Gael Mahony* for the defendants.

WHITTEMORE, J.   The plaintiffs in two counts in tort alleged false representations in respect of a house which they subsequently purchased for $45,000 from three of the defendants, partners, doing business as Mahony & Long Associates.[1]   The substance of the important misrepresentations (allegedly made in several varied and somewhat detailed statements) was that the two basement rooms and the ground floor vestibule were dry and had no water problems.

The third count was in contract for the breach of an undertaking, given as a part of the sale, that "[i]n consideration of the purchase of the premises . . . by . . . [the plaintiffs, the three defendant partners] hereby guarantee for a period of one (1) year sound construction and quality workmanship and also agree to repair any leaks, except those caused by any fault of the owner."

---

[1] The fourth defendant was the father of two of the three partners.

The jury found for the defendants under all counts.

The evidence included testimony that the plaintiffs noticed indications of water in the living quarters and in the basement, that the representations were made in the resulting conversations, and that the defendants at least should have known that there were water problems in the basement and vestibule. The jury could have found reliance, or they could have found that, rather than relying on the defendants' statements, the plaintiffs required and relied on the contract.

The evidence showed that, after the sale, water appeared in the basement and the ground floor vestibule. It then became apparent that there were serious inadequacies in the drainage system which the three defendant partners (hereinafter, the defendants) had installed to carry away the considerable amount of groundwater that seeped down the slope behind the house. Called upon to make good under their guaranty, the defendants did a very substantial amount of work in reconstructing and greatly enlarging the below ground and below basement drainage system.

1. The plaintiffs argue several exceptions to rulings on the admission or exclusion of evidence. The rulings were all either within the reasonable discretion of the judge or not prejudicial in view of other testimony.

(a) There was ample direct testimony showing that the plaintiffs relied on the representations and "would [not] have purchased the house . . . [had they known] that they had any problems with water coming through the cellar floor" and would not have "taken the house as a gift if . . . [they] had the slightest inkling" about the water problem. The excluded questions as to whether the plaintiffs relied on the representations are of the kind customarily put and admitted but they disclose the expected answer, and their exclusion is not prejudicial where reliance is otherwise directly shown.

(b) It was within the judge's discretion to exclude evidence of a flood in a neighbor's house.

(c) One of the alleged misrepresentations was that the

house conformed to the strict requirements of the city of Newton building code. An excluded question to one plumbing inspector and an answer permitted to be given by another inspector related to compliance with the plumbing regulations. As the case developed, this was a subordinate and unimportant issue. The house plainly had water problems regardless of what the regulations required. There is no basis for a reversal in these rulings. It was beside the point whether an inspector would have approved had he seen a drain pipe not connected with the sewer pipe. The regulations were not then in evidence. They could not thus be proved. Another inspector was allowed to give his opinion whether a particular section of the regulations applied to perforated drains laid in the ground. This, at most, showed the department's construction of the provision. In some circumstances this could have been relevant to the court's construction. *Cleary* v. *Cardullo's, Inc.* 347 Mass. 337, 343. It was in any event not unrelated to whether the defendants should have known of noncompliance with the building code.

(d) In the circumstances there was no prejudice in allowing in cross-examination the question to the male plaintiff whether he would accept an offer from the defendants to buy back the house for what the plaintiffs had paid plus any improvements they had made "under an appropriate accounting." Although this risked raising extraneous issues, it was related to certain of the plaintiffs' contentions and, in view of the answer,[2] the plaintiffs were not harmed.

(e) There was plainly no error in excluding several questions to the defendant Thomas E. Mahony.[3]

2. We see no error in respect of the count in contract. The judge charged that the guaranty to repair any leaks

---

[2] "It would depend on where we found another place to move. If you can find one right away. There are many considerations in how you get out of there after you spend so much money inside the place and on the grounds — where you can find a comparable place where you want to move."

[3] The questions were: "Now, do you know that it's difficult to sell a house with water problems underneath the floor . . . , isn't that so?" "And you knew by that question [whether a trap door was for a sump pump] that he was anxious to find out if there was water under the cellar?" "So you wanted to give Mr. Goldman the impression that this [the trap door] was exclusively for the cleanout of the sewerage pipe?"

applied to leaks appearing within one year. This is the
reasonable construction; the evidence showed no am-
biguity raising a question for the jury. The instructions
given adequately indicated that the defendants would re-
main responsible for their inadequate repair of leaks which
had appeared in the one year guaranty period. The under-
taking does not apply to leaks appearing in the indefinite
future. The judge rightly told the jury that if the defen-
dants had not carried out their contract the plaintiffs were
entitled to recover the cost of doing what remained to be done.

3. Of the several exceptions to the charge applicable to
the counts in tort, only two require extended discussion.
They both concern the application of our rule, which the
judge duly stated, that the plaintiffs are entitled to recover
damages sufficient to give them the benefit of their con-
tractual bargain, if such damages are reasonably proved.
*Rice* v. *Price*, 340 Mass. 502, 507–510. Restatement 2d:
Torts (Tent. draft No. 10, 1964) § 549.[4] The judge indi-
cated that the worth of all that the plaintiffs received,
including the worth of the guaranty as reflected in what
the defendants did under it (see fn. 5), was to be measured
against what the plaintiffs would have received if the repre-
sentations had been true. This is right and the plaintiffs'
objection is not well taken.

At the close of the charge, the plaintiffs' attorney took
an exception to "the charge . . . that if plaintiffs got a
bargain, then they suffered no damage." The language
referred to is indicated by supplied emphasis in the portion
of the charge in the margin.[5] As the marginal quotation

---

[4] "(1) The recipient of a fraudulent misrepresentation is entitled to
recover as damages in deceit against the maker the pecuniary loss to him
of which the misrepresentation is a legal cause, including (a) the difference
between the value of what he has received in the transaction and its purchase
price or other value given for it; and (b) pecuniary loss suffered otherwise
as a consequence of the recipient's reliance upon the misrepresentation.
(2) The recipient of a fraudulent misrepresentation in a business transaction
is also entitled to recover damages sufficient to give him the benefit of his
contract with the maker, if such damages are proved with reasonable cer-
tainty."

[5] "In this situation there was this saving clause, the saving agreement,
by the terms of which the defendant undertook to do something beyond the
delivery of this house. So I suggest to you that you determine the value of

shows, both before and after the instruction complained of, the trial judge correctly stated the law as to damages.

In light of the plaintiffs' evidence as to value, we think there was no prejudicial error. This evidence consisted of testimony by one plaintiff that the house with its water problems was worth from $20,000 to $25,000, but that if the representations had been true the house would have been worth $45,000. The sale price was $45,000. That is, the value of the bargain was to have a house worth what the plaintiffs paid for it.[6] If, as the judge charged, the

the property as it was represented to be, and then test that against the value of the house as it was, in fact, delivered after all of these arrangements had been ultimately completed and these additional things were performed by the defendant. Now, if you say that the performance of these additional things by the defendant didn't add anything to the value of the house, then, of course, you are not concerned with it. But on the other hand, if you find that the house was worth 'X' number of dollars at the time that the deed was passed and possession of the house was taken, but that after the completion of the transaction was accomplished by virtue of the defendants completing and doing the things that they undertook to do as a part of the deal, as a part of the transaction, so that the house that they delivered was not the house that they delivered on the day that the money was paid, but on the day that they carried out — if you say that they did, in fact, carry out — the terms of this agreement, if there is a difference between those two values, which difference accrues to the advantage of the plaintiffs, then that is the measure of damages to which the plaintiffs are entitled. On *the other hand, if you find that these plaintiffs got a tremendous buy from the beginning, that all of these misrepresentations, if there were any, were discounted in the price, that the house was worth every cent that they paid for it, and the misrepresentations didn't alter the value situation in any way, then if you come to that conclusion, the plaintiffs would be placed in the position of not having proved they were damaged.* The plaintiffs must ultimately prove to you that they sustained a monetary loss as a result of this transaction in which they say they were misled." The judge then charged that, if the jury found that the plaintiffs were misled, "in addition to this difference or this disparity between the value of the property as it was represented to them to be and the value of the property that was, in fact, delivered to them," they had a right to be fairly and adequately compensated for damage to property on the premises, repairs they themselves had to make, inconvenience caused by inability to enjoy to the full living in a brand new house and any expenses they sustained to make the house livable.

[6] It is not contended that there was evidence sufficient for a finding that the house as represented would have been worth more than the sale price. On the contrary, the plaintiffs' brief asserts that in any event, "there was no evidence that the plaintiffs did get a bargain and therefore the charge to the jury was inappropriate to the evidence." There was testimony that the asking price had been $64,000 and that the figure had been reduced in successive stages during the negotiations; also that two adjacent houses built by the defendants had sold at higher prices. In referring to the "tremendous buy" the judge called attention to a basis for a finding that what the plaintiffs got was "worth every cent that they paid for it" — that is, on the evidence, equal to the value of the bargain. He did not instruct that this evidence permitted the conclusion that the bargain was worth more than the sale price.

house when made good under the guaranty was worth the price paid for it, they had received the benefit of the bargain and, apart from the incidental items next discussed, they were not damaged.

The charge did not prejudice the plaintiffs' right to recover for their own expenses and their inconvenience before and in the repair period. The judge, as the marginal quotation shows (fn. 5), was explicit and clear that these items were over and above the damages as determined by the value figures for the house. In the circumstances, the verdicts for the defendants on the counts in tort reasonably show the jury's conclusion that misrepresentations, if made, were not relied on; not that the jury were misapplying the rule of damages.

4. There is nothing in the other exceptions to the charge and alleged omissions to give requests. It is sufficient that the substance of requests, if appropriate, be covered in the charge. The judge's discretion determines whether to refer to parts of the evidence. There was no occasion to state expressly that fraud was not merged in the contract. The case in tort was fully set before the jury. The charge on the issue of reliance was sufficient to inform the jury that the alleged misrepresentations need not have been the sole factor on which the plaintiffs relied in making their purchase. It was not reversible error to instruct the jury to disregard testimony of out of court statements by alleged experts; that the drainage system under the plaintiffs' house was defective and inadequate at the time of sale was otherwise fully established by the extensive alteration work the defendants did subsequent to the sale under their guaranty. It was not required that the judge instruct that an adverse inference could be drawn from the circumstance that certain defendants did not testify.

We have considered all the points argued. Only a point of practice remains.

5. The plaintiffs filed an outline bill of exceptions under S. J. C. Rule 1:22, 351 Mass. 742.

Each party properly filed designations under par. (2)

of the rule. Instead, however, of filing with his brief as a record appendix such parts of the transcript so designated as the plaintiffs' attorney deemed "necessary to his argument," as par. (13) requires, he filed a running summary of the testimony similar to that which would be contained in a narrative bill of exceptions. Such a bill, however, would come before this court only after scrutiny by the opposing party and its allowance by the judge as a true bill. Thereupon the defendants filed a record appendix reproducing the full text of the transcript that had been summarized by the plaintiffs.

The rule (par. 13) specifies that the record appendix accompanying the brief shall consist of only so much of the designated transcript as the party "deems necessary to his argument." This, of course, may be less than the portions of the transcript preliminarily designated under par. (2). The entire transcript, or, in any case, at least the designated parts of it, will be before the court, and available for inspection and consideration in the event that the record appendices appear at the argument, or on study, to be inadequate. The aim is to minimize the expensive reproduction of parts of the transcript that probably will not bear directly on the points argued.

Action to exclude or correct or supplant the plaintiffs' improper narrative statement was required. Paragraph (13) of the rule expressly permits an adversary party to file in his record appendix "additions to or corrections of the excepting party's record appendix." We order that the cost of printing the defendants' record appendix, so far as it includes material designated, initially or in reply, by the plaintiffs, is to be recovered as costs by the defendants in addition to the other costs to which they are entitled. The amount shall be determined in the Superior Court.

6. The plaintiffs' exceptions are overruled.

*So ordered.*