JOAN GOLUB vs. MILPO, INC.[1]

Suffolk. January 7, 1988. — May 16, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment. *Condominiums,* Management. *Real Property,* Purchase and sale agreement. *Release. Warranty. Damages,* Defective construction.

On appeal from entry of summary judgment in favor of the developer of a condominium complex in an action for breach of contract, breach of warranty, intentional infliction of emotional distress and violation of G. L. c. 93A by the purchaser of a condominium unit seeking recovery for damage to her unit allegedly resulting from a leaky roof, it was held that the plaintiff's claims were not barred by a release executed by the trustees of a condominium trust, charged with managing the development, which relieved the developer from liability in connection with work done on the condominium roofs where, although the release would have been valid with respect to common areas and facilities, the trustees had no authority to settle claims for damage to individual units. [400-403]

In an action by the purchaser of a condominium unit alleging breach of warranty against the developer of a condominium complex with regard to the inadequate repair of leaks in the roof of her individual unit, allowance of the developer's motion for summary judgment was error, where genuine issues of material fact were presented as to whether the leaks in the roof resulted from a failure of the developer adequately to correct leakage which occurred within the applicable one-year warranty period. [404-405]

CIVIL ACTION commenced in the Superior Court Department on February 17, 1982.

A motion for summary judgment was heard by *George W. Cashman,* J., sitting under statutory authority.

---

[1] Harold A. Theran, Donald G. Paige, and James Shulman, trustees of the Cabot Estate Condominium Trust, were joined as defendants. After summary judgment was entered for Milpo, Inc., and on the day set for trial in the action against the trustees, plaintiff voluntarily dismissed her suit against the trustees.

The Supreme Judicial Court on its own motion transferred the case from the Appeals Court.

*George W. Mykulak (Louis J. Scerra, Jr.,* with him) for the plaintiff.

*Marilyn D. Stempler* for Milpo, Inc.

LYNCH, J. The main issue here is whether a release executed by the trustees of a condominium trust is effective to bar claims by an individual unit owner for damages to her unit allegedly resulting from a leaky roof. There is also a question whether Milpo, Inc., complied with the terms of a one-year written warranty.

The plaintiff, Joan Golub, sued the defendant Milpo, Inc., and the trustees of the Cabot Estate Condominium Trust — the body charged with managing the condominium development. Only her claims against Milpo for breach of contract, breach of warranty, intentional infliction of emotional distress and violation of G. L. c. 93A are the subject of this appeal. Milpo's motion for summary judgment in its favor was allowed, the judge below reasoning that, as a matter of law, Golub's claims were barred by an agreement between the trustees and Milpo releasing Milpo from claims with respect to the roof and that, as to the breach of warranty claim, the leaks of which Golub complained occurred beyond the scope of the warranty period. Golub thereupon appealed, and we took the case here on our own motion. We reverse because we conclude that (1) the release executed by the trustees was ineffective to bar Golub from asserting claims for damage to her individual unit, and (2) genuine issues of material fact are presented whether the leaks in Golub's roof resulted from a failure of Milpo adequately to correct leaks which did occur within the warranty period.

The factual background is relatively simple. On July 20, 1978, Golub entered into a purchase and sale agreement with Milpo to purchase a condominium unit in a development known as Cabot Estate Condominium. The agreement contains an express warranty by Milpo that, for a period of one year from the closing date, the "roof of the building containing the Unit will be free from leakage due to defects in materials or work-

manship."[2] The purchase price for the unit was $89,000, $2,000 of which Golub paid at the outset as a deposit; the balance was paid at closing.

Upon taking possession of the unit, Golub discovered damage and staining of the walls and ceiling, apparently the result of leakage. By mailgram dated January 8, 1979, Golub advised Milpo of the problem and demanded that corrective measures be taken. Milpo concedes that it received this notice within the one-year warranty period contained in the purchase and sale agreement.

Milpo subsequently endeavored to repair the leaks and damage, but, the plaintiff alleges, the leaks continued nevertheless.[3] Milpo contends that tests performed on the roof after the repairs were completed failed to indicate the existence of any leaks. Golub alleges that the seepage problem has prevented her from decorating walls, ceilings and floors and has rendered the unit virtually uninhabitable.

From mid-1980 until the commencement of this action, Milpo and the trustees were in the process of negotiating to relieve Milpo of its liability with respect to the condominium's leaking roof and with respect to the condominium's security system. During this period, Golub had apprised the trustees of her complaints concerning her own unit. As a result of the negotiations, the trustees gave Milpo a release stating that, in consideration of the payment by Milpo to the condominium association of $54,500, and of Milpo's release of a claim against the trust for certain insurance premiums, the trust agreed as follows: "Trust does hereby relieve Milpo from any responsibility and liability in connection with the repair, maintenance, improvement or replacement of the roofs and alarm system for the condominium units in Phase I of the Cabot Estate Condominium, Boston, Suffolk County, Massachusetts . . . ." The

---

[2]Prior to the closing Golub observed a water stain on the floor of the unit. She was informed that any leaks had been repaired and that the roof was free from defects.

[3]The leaks reappeared on dates outside the one-year warranty period.

release was signed by the trustees and by a representative of Milpo.[4]

1. *Standard of review*. A court must deny a motion for summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, there exist genuine issues of material fact or the moving party is not entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Bernard J. Basch & Sons* v. *Travelers Indem. Co.*, 392 Mass. 1002, 1003 (1984). *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 (1976). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985). *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). With these principles in mind, we proceed to the questions before us.

2. *The release*. Golub claims that the trustees had no authority to compromise her claim against Milpo for damage to her individual unit and, hence, Milpo was not entitled to judgment as a matter of law. We agree.[5]

The condominium is a form of property ownership in which the unit owner retains an exclusive fee interest in his individual unit in addition to an undivided interest with all other unit owners in the condominium's common areas and facilities. G. L. c. 183A, §§ 3, 4, 5 (1986 ed.). See Rohan, The "Model Condominium Code" — A Blueprint for Modernizing Condominium Legislation, 78 Colum. L. Rev. 587, 587 n.3 (1978), cited in *Barclay* v. *DeVeau*, 384 Mass. 676, 682 n.12 (1981). The condominium is managed by the "[o]rganization of unit

---

[4] With respect to the security system, each member of the condominium unit owners' association was sent documents seeking individual release of Milpo. Golub received no such documents with respect to the leaks in the roof.

[5] Although the point was not briefed or argued by the parties, there is some question whether the parties to the release agreement intended the release of individual unit owners' claims. The language of the release states only that "[t]rust does hereby relieve Milpo from any responsibility and liability in connection with the *repair, maintenance, improvement or replacement of the roofs*" (emphasis supplied). The language above makes no mention of any release of claims for damage to individual units.

owners," defined in G. L. c. 183A, § 1, as "the corporation, trust or association owned by the unit owners and used by them to manage and regulate the condominium." In this case, that organization is a trust. The trustees are empowered by statute "[t]o conduct litigation and to be subject to suit as to any course of action involving the common areas and facilities." G. L. c. 183A, § 10 (*b*) (4) (1986 ed.). "Common areas and facilities" include, inter alia, the "roofs . . . of the building." G. L. c. 183A, § 1.

The power of the trustees "[t]o conduct litigation . . . involving the common areas and facilities" includes the power to settle claims prior to or in the course of litigation. Furthermore, the trustees here were specifically empowered by the trust instrument to enter into contracts on the unit owners' behalf. Thus, the release was valid with respect to common areas and facilities.

However, the trustees had no authority to settle claims for damages to individual units. While this court has not directly addressed the issue, analogy may be made to *Glickman* v. *Brown*, 21 Mass. App. Ct. 229 (1985). In *Glickman*, condominium trustees sued the developer on behalf of the unit owners to recover damages caused by a faulty heating system. The developer argued that any damage award should run only to the particular unit owners who participated in the trustees' suit against him. The court rejected this argument, holding that the statutory scheme set out in G. L. c. 183A makes clear that "the trustees act only for the benefit of all the unit owners." *Id.* at 236. If the trustees may only act on behalf of *all* unit owners, it follows, therefore, that trustees do not have authority to settle the particular claim of an individual unit owner.

This conclusion is borne out in the plain language of c. 183A and in the very definition of condominium ownership. The statute explicitly states that the trustees' power to conduct litigation extends to the "common areas and facilities." G. L. c. 183A, § 10 (*b*) (4). Exclusive possession and control of the individual unit is reserved to the unit owner. G. L. c. 183A, § 4. This division between individual and common rights is basic to the theory of condominium ownership. See Rohan, The

"Model Condominium Code" — A Blueprint for Modernizing Condominium Legislation, *supra*; Schwartz, Condominium: A Hybrid Castle in the Sky, 44 B.U.L. Rev. 137, 139 (1964). It effectively precludes any argument that the trustees could release an individual's right of action when the trustees' power in this regard clearly extends only to common areas and facilities.

This was the conclusion of the New Jersey Supreme Court in *Siller* v. *Hartz Mountain Assocs.*, 93 N.J. 370, cert. denied, 464 U.S. 961 (1983), where the court examined the question whether a settlement and general release given by a condominium association to the developer could act to bar the plaintiff unit owners' claims for damage to their individual units. The court said "defective conditions in the common elements may also result in injury to the unit owner and damages to his personal property and unit. For example, a faulty roof may result in personal property damage in the unit. The unit owner's right to maintain an action for compensation for that loss against the wrongdoer is not extinguished or abridged by the association's exclusive right to seek compensation for damage to the common element." *Id.* at 382. The court then held on this basis that the settlement between the association and the developer could not preclude the plaintiffs from pursuing their claims. *Id.* at 384. See *Brickyard Homeowners' Ass'n Management Comm.* v. *Gibbons Realty Co.*, 668 P.2d 535, 542 (Utah 1983) (some claims may have "an individual nature which prevents the [condominium association] from suing on behalf of the unit owners collectively"). Cf. *Frantz* v. *CBI Fairmac Corp.*, 229 Va. 444, 451 (1985) (individual unit owners bound by compromise reached between developer and condominium association where "the compromise involved a claim for the violation of a common, rather than an individual, right"). The above authorities articulate explicitly what we see as implicit in G. L. c. 183A.

Milpo contends, however, that regardless of the trustees' authority, it had the right to rely on the release as relieving it from liability for the claims of individual unit owners under G. L. c. 183A, § 10 (*e*). Section 10 (*e*) provides that: "If the

organization of unit owners is a trust or unincorporated associ-
ation, an instrument signed by a majority of the trustees or of
the managing board named in the master deed and duly attested
as the act of such trust or association may be relied on as
conclusively establishing that such instrument was the free act
of the trust or association, and shall be binding upon such trust
or association when recorded. No purchaser, mortgagee, lender
or other person dealing with the trustees or the managing board
of the association, as they appear of record, shall be bound to
ascertain or inquire further as to the persons who are then
trustees or members of the managing board nor be affected by
any notice, implied or actual, relative thereto, other than a
recorded certificate thereof, and such recorded certificate shall
be conclusive evidence of the personnel of said trustees or
members of the managing board and of any changes therein."
We see no indication in the language quoted above that an
instrument purporting to accomplish acts outside the scope of
the trustees' authority nonetheless may be relied upon as if the
acts were within the trustees' authority. Rather, the statute
merely permits third parties to rest assured that instruments
signed and attested to by a majority of the trustees of record
may be relied upon as the "free act" of the trust without further
investigation by the third party as to whether the instrument's
signatories are actually current trustees. The statute offers no
guarantee that the act was within the trustees' proper authority
to perform.

Therefore, the statute cannot fairly be interpreted to mean
that a third party may rely on a general release relating to
common areas to absolve it of liability relating to individual
units. Such a reading contravenes the plain language of the
statute. van Dresser v. Firlings, 305 Mass. 51, 53-54 (1940)
("reason and common sense are not to be abandoned in the
interpretative process, as it is to be supposed that the Legislature
intended to act in accordance with them"). See 2A C. Sands,
Sutherland Statutory Construction § 45.12 (4th ed. 1984).[6]

_____

[6]Milpo also contends that had Golub intended to limit the scope of the
releases, that intent should have been stated, citing Schuster v. Baskin, 354
Mass. 137, 140 (1968), and Naukeag Inn, Inc. v. Rideout, 351 Mass. 353,

3. *The warranty.* The judge below found that Milpo had fulfilled its one-year warranty with respect to leaks in the roof of Golub's unit, relying on *Goldman* v. *Mahony*, 354 Mass. 705 (1968). In *Goldman*, we concluded that a reasonable construction of a warranty similar to the one at issue here was that it applied to "leaks appearing within one year." *Id.* at 709. However, we also made clear in *Goldman* that "the defendants would remain responsible for their inadequate repair of leaks which had appeared in the one year guaranty period." *Id.* Golub does not dispute that only one of the several leaks of which she complains occurred within the warranty period. Rather, she contends that a genuine issue of material fact exists whether Milpo adequately repaired the leak that did occur within the warranty period. Sufficient dispute exists on this issue to make summary judgment inappropriate.

Golub alleges that immediately after taking possession of her unit, she discovered water damage resulting from a leaking roof, that she notified Milpo of the problem within the one-year warranty period and demanded that repairs be made. Milpo admitted to receiving this notice within the warranty period. Golub further avers that Milpo took remedial measures but that these failed to correct the problem. She claims in her affidavit that the roof continued to leak during periods of inclement weather. She cited specific instances in which she reported subsequent leaks to the condominium's manager. She stated that she had informed Milpo on January 16, 1982, of her continuing problems with the roof and had demanded repairs.[7]

---

356 (1966). This contention misses the mark because implied within it is the assumption that Golub was a party to the release agreement. She was not. The parties were Milpo and the trustees of the condominium. The fact that as a member of the steering committee of the unit owners' association Golub was aware of the negotiations between Milpo and the trustees is irrelevant, for the fact remains that Golub herself was never a party to the release agreement.

[7] Golub also alleged that the leakage problems were the result of structural defects in the roof which Milpo's remedial measures may have failed to address. However, these allegations were based upon Golub's reading of reports of several engineers employed by the condominium rather than upon her personal knowledge. Hence, the allegations may not be used to defeat the motion. See *Madsen* v. *Erwin*, 395 Mass. 715, 719, 721 (1985).

Milpo, on the other hand, alleges that in response to Golub's complaint about the first leak, repairs were performed on the flashing, brick joints were sealed, waterproofing material was applied and stepflashing joints on an adjacent unit were sealed. Milpo alleged that tests performed on the unit after the repairs failed to indicate the existence of any leaks. The defendant further avers that one of the subsequent leaks reported by Golub was unrelated to the initial leak and was repaired by an organization employed by the condominium.

On these facts and within the framework of summary judgment, it cannot conclusively be determined whether Milpo effectively repaired the roof. In acting on a summary judgment motion, it is not proper for a court to pass on the credibility of witnesses or the weight to be accorded proffered evidence. *Shawmut Worcester County Bank, N.A.* v. *Miller*, 398 Mass. 273, 281 (1986). *Godbout* v. *Cousens*, 396 Mass. 254, 257 (1985). The defendant's allegation that one of the subsequent leaks was unrelated to the initial leak only raises a dispute as to that issue. Furthermore, even were we to accept the proposition as a given, the defendant has offered no explanation whether or not the other subsequent leaks were related to the initial leak. A trial is necessary to determine such facts. Hence, summary judgment was inappropriate.

*Judgment reversed.*