Greco, J.
This is a Dist./Mun. Cts. RAD.A., Rule 8C appeal of the allowance of the defendant’s motion to dismiss for failure to state a claim upon which relief could be granted.
Plaintiff Linda J. Atoonian’s complaint sought damages in two counts for the .defendant's alleged violation of G.L.c. 93A, §2 and “fraud, deceit and misrepresentation.” The factual allegations of the complaint are as follows: The plaintiff agreed to buy a Mercedes Benz from defendant Flagship Motorcars, Inc. (“Flagship”) for $35,522.00. After so agreeing, the plaintiff informed Flagship that she owned a Chevrolet Blazer which she wished to sell to another dealership, Barron Chevrolet (“Barron”), for $20,000.00 in view of the “long-term business relationship she had enjoyed” with Barron as a customer. Flagship agreed to take the Blazer as a trade-in, thereby reducing the plaintiff’s sales tax on the Mercedes purchase by $1,000.00. The complaint alleges that the defendant also agreed to turn the Blazer over to Barron.[1] When the plaintiff delivered the Blazer to Flagship, a representative assured her that Flagship had received $20,000.00 from Barron, and that Barron would be taking possession of the Blazer. Flagship reneged, however, on the alleged agreement to “bank” the Blazer and retained possession of it. In view of its excellent condition and low mileage, the Blazer had a resale value in excess of $20,000.00, and the plaintiff wanted Barron to enjoy the expected profit on the Blazer’s resale. The complaint further states that but for her desire that Barron get the Blazer, the plaintiff would have sold it privately. The complaint concludes that Flagship’s alleged representations that it would transfer the Blazer to Barron were falsely and fraudulently made with the intent to mislead and defraud her.
Attached to the complaint as exhibits and referenced'therein are copies of the plaintiff’s G.L.c. 93A demand letter to Flagship; Flagship’s response; the Purchase Agreement for the Mercedes signed by the plaintiff, which lists the Blazer as a trade-in; and the Assignment of Title signed by the plaintiff which transferred ownership of the Blazer to Flagship.
In allowing Flagship’s Mass. R. Civ. P., Rule 12(b) (6) motion to dismiss, the trial court ruled as follows:
I find that Plaintiffs claim is barred by the terms of the written agreement she signed, that she suffered no damage as a result of any action of the defendant, and that if her allegations were allowed, she would be asking the
*75 Court to allow her to benefit from a fraud against the Commonwealth.[2]
1. Because we agree that the complaint was properly dismissed for the plaintiffs failure to allege that she was harmed in a manner that the law would recognize, it is unnecessary to review the additional grounds set forth by the trial court for its order of dismissal. Further, as the trial court’s Rule 12(b) (6) ruling is easily sustained upon examination of the four corners of the plaintiffs complaint, we decline to address the plaintiffs suggestion that the defendant’s motion to dismiss might have been improperly converted into a motion for summary judgment.[3]
“For purposes of reviewing disposition of a motion to dismiss, ‘the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff’s favor, are to be taken as true.’” Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998), quoting from Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). The allowance of a Rule 12(b) (6) motion will be sustained on appeal only where “it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.” Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 12-13 (1987); Kurker v. Hill, 44 Mass. App. Ct. 184, 186 (1998). Based on the allegations in her complaint, it is clear that the plaintiff would not be able to prove Flagship’s liability for “fraud, deceit and misrepresentation,” for a violation of G.L.c. 93A or for any other actionable cause.
2. A tort action for deceit is subject to dismissal “unless it alleges some legal damage to the plaintiff. The mere deceit does not create a cause of action.” Berenson v. Mahler, 326 Mass. 305, 307 (1950). To make out a case of actionable fraud, the plaintiff would have to show that she reasonably relied to her detriment on a material misrepresentation of fact which was knowingly made by Flagship. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); International Totalizing Systems, Inc. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 430 (1990).
In most cases, the measure of damages for actionable fraud would be the difference between the actual value of what was received and the value of what would have been received had the misrepresentation not been made. Melvin v. H.J. Nassar Motor Co., 355 Mass. 692, 694 (1969); Davis v. Noone, 341 Mass. 488, 492 (1960); Anzalone v. Strand, 14 Mass. App. Ct. 45, 49 (1982). In the instant case, there is no allegation of any misrepresentation by Flagship relating to the condition or value of the Mercedes Benz. At the very least, the plaintiff would have had to show at trial that what she actually received was worth less than that which she would have received had Flagship fulfilled its representation that it would sell the Blazer to Barron. See Goldman v. Mahoney, 354 Mass. 705, 709-710 (1968). It is clear from the complaint, however, that she would have been unable to show such damages. If Flagship sold the Blazer to Barron, the plaintiff would have had her new Mercedes, would have paid a sales tax on the reduced purchase price and, at most, would have possibly been owed a favor in the future from Barron. What she in fact received was the Mercedes, the same break on the sales tax, but no opportunity to ingratiate herself with Barron. On these allegations, any damages based on the difference would have been speculative, and could not have been established “upon a solid foundation in fact.” Santana v. Registrars of Voters of Worcester, 398 Mass. 862, 867 (1986), quot *76 ing from John Hetherington & Sons v. William Firth Co., 210 Mass. 8, 22 (1911).
3. The plaintiffs Chapter 93A claim was also properly dismissed. Even accepting as true all of the factual allegations set forth in the complaint, as a matter of law, see Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 678 (1983), Flagship committed no violation of G.Lc. 93A, §2 (a) and the plaintiff was not “injured” within the meaning of §9(1). See Sullivan v. Boston Gas Co., 414 Mass. 129, 138 n.9 (1993).
A mere breach of contract, without more, does not rise to the level of an unfair or deceptive act under G.L.c. 93A Framingham Auto Sales, Inc. v. Workers’ Credit Union, 41 Mass. App. Ct. 416, 418 (1996). By selling the plaintiff the car she wanted at the agreed price, by giving her the full amount agreed upon as a trade-in, but by deciding not to go along with the plaintiff’s proposed “banking” scheme, Flagship’s conduct could hardly be labeled as “immoral, unethical, oppressive, or unscrupulous.” PMP Assoc., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
Moreover, the plaintiff was not injured by Flagship’s conduct. As discussed above, she suffered no actual damages. Nor did Flagship invade “any legally protected interest’ of the plaintiff as an individual, or of consumers in general, by deciding not to “bank” the Blazer. See Clegg v. Butler, 424 Mass. 413, 418 (1997); Leardi v. Brown, 394 Mass. 151, 159 (1985). In the absence of actual damages or the invasion of a legally protected interest, the plaintiff suffered no harm for which minimum damages under G.L.c. 93A, §9(3) could have been awarded. Id. at 160. See also Parker v. D’Avolio, 40 Mass. App. Ct. 394, 398 (1996).
Appeal dismissed.
So ordered.

 This procedure whereby one dealer would take a vehicle, ostensibly as a trade-in, with tiie intention of thereupon transferring ownership of it to another dealer was characterized by the plaintiff as “banking” the vehicle with the first dealer.

 The reference to fraud is based on the fact that the plaintiff paid $1,000.00 less in sales tax because the Blazer was treated as a $20,000.00 trade-in which reduced the purchase price of the Mercedes. If the plaintiff had sold the Blazer directly to Barron, she would have paid a sales tax on the full sales price of the Mercedes. The plaintiff’s complaint expressly states that the car was “banked” with Flagship “[t]o avoid the sales tax for $20,000.00 on the purchase price of the Mercedes Benz.”

 The plaintiff makes this suggestion in large part on the basis of her own filing of two affidavits in opposition to the defendant’s motion to dismiss.